UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 0 5 2015

Fagioli S.p.A.,

    Plaintiff,

–v–

General Electric Co.,

    Defendant.

14-CV-7055 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

  This action is one of three such actions pending in Brazil and New York concerning the same disputed agreement and the same set of facts. In sum and substance, Plaintiff Fagioli S.p.A. ("Fagioli") believes that its agreement with Defendant General Electric Co. ("GE") bars the two suits that GE's insurance company, Liberty Seguros S.A. ("Liberty Seguros"), brought against it in both Brazil and New York State court. Thus, it filed a breach of contract and declaratory judgment action that seeks, in essence, to have this Court declare that Liberty Seguros is barred from suit based on the Fagioli-GE agreement and related waiver of subrogation certificates. The problem is that Liberty Seguros, whose interests are clearly affected by such a judgment, is not a party to this action.

  On November 25, 2014, the Court granted GE's motion to dismiss Fagioli's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a required and indispensable party. Dkt. No. 32. On December 10, 2014, Fagioli timely filed a motion for reconsideration pursuant to Rule 59(e). Dkt. No. 34. Having carefully re-examined the points of contention, and having carefully reviewed Fagioli's assertions of error, the Court sees no basis to reconsider the prior ruling. Therefore, Fagioli's motion for reconsideration is DENIED.

1

I.  **LEGAL STANDARD**

"It is well settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). Instead, "the standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

II.  **BACKGROUND**

The relevant factual and procedural background of this case is set forth in the Court's Memorandum and Order dated November 25, 2014. Dkt. No. 32. The Court assumes familiarity with this material and offers additional factual background only to the extent it is necessary to provide context for a given issue.

III.  **DISCUSSION**

Fagioli asserts three errors with this Court's Memorandum and Order granting GE's motion to dismiss: (1) the Court incorrectly looked outside the pleadings in violation of Rule 12(b)(7); (2) the Court misapplied Rule 19; and (3) the Court failed to hold that the Fagioli-GE agreement and related waiver of subrogation certificates waived Liberty Seguros's subrogation rights, which would have precluded a finding that Liberty Seguros is a required and indispensable party. Because Fagioli's arguments suggest a basic misunderstanding of the law that was applied in the Court's Order granting GE's motion to dismiss, the Court fully explains each point of error and why it misses the mark.

   A.  **Rule 12(b)(7)**

First, Fagioli contends that the Court erred by referencing documents outside the pleadings in its Memorandum and Order granting GE's motion to dismiss. As explained below,

2

this argument finds no support in the law or commonsense. In any event, the outcome would have been the same in the absence of such references to extra-pleading documents.

### 1. The Motion to Dismiss Arguments and Order

By way of background, GE's motion to dismiss argued that it has no interest in this action because Liberty Seguros made it whole following the loss of the gas turbine generator that Fagioli allegedly damaged. GE pointed out that if it had brought this action, a court would have held that it was not the real party in interest under Rule 17 because Liberty Seguros's full payment of GE's claim meant that Liberty Seguros was fully subrogated to GE's interests. By logical extension, if Liberty Seguros would be considered the only real party in interest under Rule 17, surely it must be a required and indispensable party under Rule 19. It further argued that Liberty Seguros, not GE, had brought the actions that Fagioli argued were in violation of the Fagioli-GE agreement, which, Fagioli argued, was binding on Liberty Seguros as GE's alleged subrogee.

In opposition to the motion to dismiss, Fagioli alleged that GE owed a deductible of $25,000 under its insurance policy with Liberty Seguros, and, consequently, Liberty Seguros was only partially subrogated to GE's interests. Notably, Fagioli did not actually allege in its Complaint that GE owed, much less paid, a deductible of $25,000. Instead, it attached to its opposition brief the Declaration of John R. Keough, III, which itself contained a copy of the GE-Liberty Seguros insurance agreement providing that GE had a deductible of $25,000 "for each and every loss *excluding total loss*." Keough Decl. Ex. A at 1 (Dkt. No. 16-1) (emphasis added). Similarly, Fagioli's Amended Complaint lacks any allegation that the gas turbine generator was not rendered a total loss under the GE-Liberty Seguros insurance agreement. Instead, Fagioli's opposition brief included as an attachment a copy of a purchase and sale agreement between Axford Turbine Consultants LLC and Liberty Mutual Insurance Company and Associates (presumably an affiliate of Liberty Seguros) under which the damaged gas turbine generator was sold for $1.5 million. Keough Decl. Ex. B. (Dkt. No. 16-2). On the basis of these two documents attached to and allegations contained in the opposition brief, but not in the Amended

Complaint, Fagioli countered GE's motion to dismiss with the following argument: (1) GE was required to pay a $25,000 deductible unless the generator was rendered a total loss, (2) the damaged generator was re-sold for $1.5 million, suggesting it might not have been rendered a total loss, so (3) GE must have paid a deductible of $25,000, which (4) means that GE still has an interest in this action.

In reply, GE submitted the Declaration of Anthony C. Walsh, GE's Global Chief Litigation Counsel, whose sworn statement clarified that "GE was not required to and did not pay any deductible under the Policy because the generator was rendered a total loss as a result of the extensive damage." Walsh Decl. ¶ 6 (Dkt. No. 27).[1] The Court cited this statement in concluding that Liberty Seguros would be the only real party in interest under Rule 17, a conclusion that informed, but did not dispose of, the Court's Rule 19 analysis.

### 2. The Court Is Not Limited to the Pleadings Under Rule 12(b)(7)

Based on this background, Fagioli argues that the Court improperly relied on Walsh's Declaration in granting GE's motion to dismiss. Fagioli's argument would have more force if the Court had granted GE's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim on which relief may be granted. For such motions, a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). In addition, the court must limit its review to the allegations contained in the complaint and any documents attached to the complaint, incorporated in the complaint by reference, or relied upon by the plaintiff in preparing the complaint, as well as any matters of which judicial notice may be taken. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011).

---

[1] GE also submitted the Declaration of Juliano Martins Ramos, the Marine Claims Manager for Liberty Seguros in Sao Paulo, Brazil, who similarly affirmed that "Liberty Seguros ultimately issued payments to GE under the Policy totaling $8.5 million for the total loss of the generator" and, consequently, "GE was not required to and did not pay any deductible under the Policy because the generator was rendered a total loss as a result of the extensive damage." Ramos Decl. ¶¶ 6-7 (Dkt. No. 28). The Court did not cite this Declaration in its Memorandum and Order because it was cumulative of the Walsh Declaration.

But the Court is not so limited in its consideration of a motion to dismiss for failure to join a necessary and indispensable party under Rule 12(b)(7). As summarized by a leading civil procedure treatise,

> [t]he cases make it clear that the burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence. To discharge this burden, it may be necessary to present affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence. The district judge is not limited to the pleadings.

5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1359 at 67-68 (3d ed. 2004) (footnotes omitted); *see also Toney-Dick v. Doar*, No. 12 Civ. 9162 (KBF), 2013 U.S. Dist. LEXIS 50050, at *25 (S.D.N.Y. Mar. 18, 2013) ("'When reviewing a motion to dismiss under Rule 12(b)(7), the Court may consider documents and facts outside the pleadings.'" (quoting *Dumann Realty, LLC v. Faust*, 267 F.R.D. 101, 101 n.1 (S.D.N.Y. 2010))); *Circle Indus. v. City Fed. Sav. Bank*, 749 F. Supp. 447, 457 n.2 (E.D.N.Y. 1990) ("Matters outside the pleadings may be considered in ruling on a Rule 12(b)(7) motion." (citing *Sims v. Mack Trucks, Inc.*, 407 F. Supp. 742, 743 n.2 (E.D. Pa. 1976)), *aff'd*, 931 F.2d 7 (2d Cir. 1991). Indeed, it would be very difficult in many instances for a movant under Rule 12(b)(7) to satisfy its burden if it were forced to rely solely on the allegations contained in the plaintiff's complaint. This is made all the more obvious by the fact that the failure to name the required and indispensable party in the complaint is often by design.

Moreover, Fagioli's citations in support of its argument do not contradict this point.[2] For example, in *In re Caesars Palace Securities Litigation*, the court observed that

> there is nothing in the motion or supporting affidavit which factually substantiates the movants' position that there are any indispensable parties not joined in this action. The only support for this position are the conclusory allegations of the defendants, made in their briefs, that non-voting stockholders who are not parties

---

[2] In its opening brief, Fagioli fails to address, much less distinguish, the legal authority that the Court relied on in its Memorandum and Order granting GE's motion to dismiss. Instead, Fagioli cites cases applying Rule 12(b)(6) rather than Rule 12(b)(7). The Court limits its discussion here to cases cited in Fagioli's reply that actually apply Rule 12(b)(7).

5

to this action were intimately involved in the underlying transaction and are "indispensable" to the disposition of this case.

*In re Caesars Palace Securities Litigation*, 360 F. Supp. 366, 395 (S.D.N.Y. 1973) (footnote omitted). The court continued:

> Such *ex parte* statements, made without any documentation, are insufficient to sustain the instant motion. Defendants' motion must be premised upon credible evidence which supports their claim that such parties exist and identifies those persons who are claimed to be indispensable. Absent such evidence, this Court would be forced to make its decision *in vacuo*.

*Id.* (citations omitted).[3] This analysis is consistent with the generally accepted principle that the court is not limited to the pleadings on a Rule 12(b)(7) motion. Similarly, in *United States v. New York Supreme Court*, the court noted that "[o]n a motion to dismiss pursuant to Rule 12(b)(7), 'the moving party has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence.'" *United States v. N.Y. Supreme Court* No. 07-CV-27S, 2008 U.S. Dist. LEXIS 7705, at *18-19 (W.D.N.Y. Feb. 1, 2008) (quoting *Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002)). The court went on to state that it "may consider matters outside the pleadings in ruling on the motion," *id.*, but "'*ex parte* statements, made without any documentation, are insufficient to sustain [such a] motion,'" *id.* (quoting *In re Caesars Palace Sec. Litig.*, 360 F. Supp. at 395). Far from holding that it is error for a court to consider matters outside the pleadings on a Rule 12(b)(7) motion, these cases stand for the opposite proposition. Thus, it was appropriate for GE to submit the sworn declaration of its Global Chief Litigation Counsel to satisfy its burden on the motion[4] and it was similarly appropriate for the Court to cite the declaration in reaching its decision on the motion.

---

[3] It is unclear from the *In re Caesars Palace Securities Litigation* opinion why these statements, which were contained in a brief that was presumably served on opposing counsel and the court, would be considered *ex parte* as opposed to merely *absque documenta*, only the latter of which would require a decision *in vacuo*.

[4] In addition to the Walsh and Ramos Declarations, GE also supplied the following documents: (1) the Summons and Complaint filed on May 8, 2014 by Liberty Seguros against Fagioli and Transdata Transportes Ltda ("Transdata") in New York Supreme Court, New York County; (2) Fagioli's Answer and Counterclaim filed in the New York action on September 5, 2012; (3) Liberty Seguros's Complaint filed against Fagioli and Transdata on December 19, 2013 in the 11th Civil Court of the Central Courthouse of Sao Paulo, Brazil together with an English translation; (4) Fagioli's Answer filed in the Brazilian action on April 2, 2014 together with an English translation; and (5) the Decision of the Court in the Brazilian action dated July 29, 2014 (but without an English translation).

In any event, Fagioli's dispute over the Walsh Declaration is much ado about nothing. As the Court was at pains to note in its Memorandum and Order, that Liberty Seguros was fully subrogated to GE's interest and thus the only real party in interest under Rule 17 merely informed its analysis under Rule 19 that Liberty Seguros was a required and indispensable party. The Court nonetheless went on to apply the relevant factors under Rule 19(a) and (b) and found that Liberty Seguros was a required and indispensable party based on the following facts that were not affected by the Walsh Declaration: (1) Liberty Seguros had claimed an interest relating to the subject of this action based on the pending lawsuits against Fagioli; (2) any adjudication of the present dispute would affect Liberty Seguros's interests; and (3) Liberty Seguros could not be joined without destroying the Court's subject-matter jurisdiction. The fact that Liberty Seguros was *also* fully subrogated to GE's interests because GE did not pay a deductible, and was, therefore, the only real party in interest under a Rule 17 analysis, merely confirmed and provided an alternative basis for reaching this same conclusion. *See* Dkt. No. 32 at 5.

**B.      Rule 19**

Fagioli next argues that the Court misinterpreted and misapplied Rule 19. On this issue, Fagioli presents one argument in its opening brief and a slightly different one in its reply brief.

Beginning with the reply, Fagioli contends that the Court erred by finding Liberty Seguros to be a "required" party under Rule 19(a) because it is a party whose joinder would destroy the court's subject-matter jurisdiction under Rule 19(b). To fully understand this circular argument, it is necessary to quote Fagioli's reply brief at length:

> First of all, the Order incorrectly overlooks that Liberty Seguros cannot be a "required" party under the express language of Rule 19(a)(1). Although the Order recognizes that Liberty Seguros "is also a party whose joinder would not be feasible as it would destroy the subject-matter jurisdiction of this Court[,]" the Order overlooks that such a finding precludes such a party from the express definition of a "required" party set forth in Rule 19(a)(1). (Order at 6) That Rule defines a "required" party in relevant part as follows: "A person who is subject to service of process ***and whose joinder will not deprive the court of subject matter jurisdiction*** . . . ." Fed. R. Civ. P. 19(a)(1) (emphasis added). The Order thus cannot properly characterize Liberty Seguros as a "required" party as a matter of law under Rule 19(a)(1).

7

Fagioli Reply Br. at 3 (Dkt. No. 40) (emphasis in original). This argument is frivolous.

As explained in the Court's Memorandum and Order, the Rule 12(b)(7) analysis is a two-step inquiry. Dkt. No. 32 at 1. First, the court determines whether the absent party is a required party under Rule 19(a). Second, and "[i]f a person who is required to be joined if feasible cannot be joined," the court must then determine under Rule 19(b) "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Under Fagioli's catch-22 reading of Rule 19, the court would never get to step two because the indispensable party could never be a required party under step one, or a finding of indispensability under step two would always negate a finding that the party is required under step one. Indeed, Fagioli's interpretation reads Rule 19(b) out of existence.

Turning to the opening brief, Fagioli argues that the Court erred in finding Liberty Seguros is a required party because it has not claimed an interest in this action. More accurately, Fagioli cites *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996), for the proposition that "[i]t is insufficient under the Rule for GE to claim the interest on Liberty Seguros's behalf"; rather, "[o]nly the absent party may claim such an interest under the rule." Pl's. Br. at 2. It is unclear what reading Fagioli places on the term "claim," but it appears that Fagioli would require some type of actual appearance or filing in this action in order for the required party to "claim an interest" relating to the subject of it. *See* Pl's. Br. at 9 (Dkt. No. 35) ("Yet, Liberty Seguros has not claimed such an interest to this Court."). The Court does not read the Rule so narrowly.

To begin with, Rule 19 does not say that the absent party must claim an interest in the action itself; it describes the required party as one who "claims an interest *relating to the subject of* the action." Fed. R. Civ. P. 19(a)(1)(B) (emphasis added); *Cf. Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-44 (9th Cir. 1983) (concluding that Rule 19(a) was not satisfied because "[t]he Government is not a party to any of the teaming agreements, and has never asserted a formal interest in either the subject matter of this action or the action itself"). Moreover, the Advisory Committee Notes to the Rule expressly contemplate that a movant under Rule 12(b)(7) might "seek[] *vicariously* to protect the absent person against a prejudicial

8

judgment." Fed. R. Civ. P. 12 advisory committee's note (emphasis added). One of the reasons for such vicarious protection is that the Rule is not intended to benefit only the absentee. Rather, "[t]he interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." *Id.* In addition, "[t]he possible collateral consequences of the judgment upon the parties already joined are also to be appraised. Would any party be exposed to a fresh action by the absentee, and if so, how serious is the threat?" *Id.* Both the Rule's text and the drafter's notes make clear that the movant is permitted to assert the absent party's claimed interest relating to the subject of the action, provided, of course, that there is such a claimed interest.

Fagioli's cited authority is, once again, not to the contrary. Fagioli latches on to the Second Circuit's statement in *Peregrine* that "[i]t is the absent party that must 'claim an interest.'" 89 F.3d at 49. As support for this statement, the Second Circuit cited *Northrop Corp.* and parenthetically noted that "satisfying the second prong of Rule 19(a)[5] is 'contingent [] upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.'" *Id.* (quoting *Northrop Corp.*, 705 F.2d at 1043).[6] At no point, however, did the Second Circuit indicate that the absent party must claim an interest relating to the subject of the action in the action itself. Nor is there anything in *Peregrine* to suggest that something more than filing two separate suits against Fagioli concerning the very agreement and facts at issue in this case is necessary to satisfy Rule 19(a)(1)(B)'s requirements.

C.   **Subrogation**

Finally, Fagioli argues that the Court erred by failing to find that Liberty Seguros "expressly waived its right to subrogation against Fagioli for the alleged loss, and thus has *no*

---

[5] The structure of Rule 19 was modified in 2007. At the time of *Peregrine*, the language of Rule 19(a)(1)(B) was contained in Rule 19(a)(2).

[6] It is worth noting the sentences that follow the quoted sentence in the *Northrop Corp.* opinion: "The Government is not a party to any of the teaming agreements, and has never asserted a formal interest in either the subject matter of this action or the action itself. On the contrary, the record reflects that the Government has meticulously observed a neutral and disinterested posture, and regards this as a private dispute. The Navy has declared its intent to respect the teaming relationship, and has consistently advised the parties to resolve their private agreements in accordance with law and their private agreements. McDonnell offers no cogent reason why we should second-guess the Government's assessment of its own interests." 705 F.2d at 1043-44.

9

*interest* in the subject matter of the instant action." Pl's. Br. at 1 (emphasis in original). But this puts the cart before the horse: Whether Liberty Seguros's subrogation rights have been waived is the very subject of the declaratory judgment action. Under Fagioli's argument, the Court would have to decide the declaratory judgment action before it could determine whether the action should have been dismissed in the first place for failure to join a necessary and indispensable party. This would be highly inefficient to say the least.

Moreover, even if the Fagioli-GE agreement or related subrogation waiver certificates were found to have waived Liberty Seguros's subrogation rights, this would not change the fact that Liberty Seguros would be a necessary and indispensable party for the Court to make that determination. In short, these are two separate, albeit related, inquiries. Fagioli's Amended Complaint sought a declaratory judgment that the waiver of subrogation certificates bar Liberty Seguros from pursuing any recovery against Fagioli, Am. Compl. ¶ 24.a., that the waiver of recourse clause bars Liberty Seguros from pursuing any recovery against Fagioli, Am. Compl. ¶ 24.b., and that "Liberty Seguros, as alleged subrogee of GE," is subject to the Fagioli-GE agreement's forum selection and limitation of liability clauses, Am. Compl. ¶ 24.c. and f., which would bar Liberty Seguros's Brazil actions and attempts to stay the New York State court action, Am. Compl. ¶ 24.g. The Court concluded that any adjudication of these issues would affect Liberty Seguros, which had claimed an interest relating to the subject of the action based on the Brazil and New York State court actions (the latter of which is a mirror image of the present suit, but with Liberty Seguros in the place of GE), and which could not be joined without destroying the subject-matter jurisdiction of this Court. In sum, even if a court ultimately concludes that Liberty Seguros is barred from bringing suit against Fagioli based on valid waivers of its subrogation rights, Liberty Seguros may still be a necessary and indispensable parties whose presence is required to make that determination.

Fagioli's many citations on this alleged point of error merely stand for the uncontested proposition that "[t]he insurer may waive its right to subrogation, either by contract or by conduct inconsistent with the right of subrogation." *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d

101, 108 (2d Cir. 1992). But, as explained above, determining whether such waiver has in fact occurred will often require the presence of the insurer. For example, in *Extaza of 34th Street v. City Stores, Inc.*, a New York state court case that Fagioli extensively relies on,[7] the New York Court of Appeals first held that "[a]lthough nominally an action by the tenant against its landlord to recover for water damage, the papers make clear that the real party in interest is Insurance Company of the State of Pennsylvania (State Insurance), the tenant's insurer, which seeks to assert the tenant's rights by way of subrogation." 467 N.E.2d 889, 890 (N.Y. 1984). After concluding that the insurer was the real party in interest based on its claimed right of subrogation, the Court went on to interpret the policy at issue to find that "State Insurance having waived its right to subrogation against the landlord, to whom tenant by entering into the lease had given a prior written release . . . has no cause of action in subrogation." *Id.* Rather than support Fagioli's contention, this case demonstrates that whether an insurer has no cause of action in subrogation because it waived its subrogation rights is distinct from the question of which parties must be joined before a court makes that determination.

## IV.   CONCLUSION

Having reviewed Fagioli's three assertions of error, the Court concludes that Fagioli has not pointed to any controlling decisions or data that might be reasonably expected to alter the conclusion reached by the Court in its Memorandum and Order dated November 25, 2014, Dkt. No. 32. Therefore, Fagioli's motion for reconsideration is DENIED. This resolves Dkt. No. 34. The Clerk of Court is directed to close this case and enter judgment accordingly.

SO ORDERED.

Dated: June __5__, 2015
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[7] Because a court sitting in diversity generally applies federal procedural law, *see Erie R.R v. Tompkins*, 304 U.S. 64 (1938), this state-court opinion, which Fagioli cites in support of its argument, is provided merely as persuasive authority on this general point.